# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

MARGARET KIPHART,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

Case No. 2:18-cv-02217-BNW

**ORDER**

This matter was referred to the undersigned magistrate judge on consent under 28 U.S.C. § 636(c). (ECF No. 24.) The case involves review of an administrative action by the Commissioner of Social Security denying Plaintiff Margaret Kiphart's application for disability insurance benefits under Title II of the Social Security Act. The court reviewed Plaintiff's motion for reversal or remand (ECF No. 19), filed April 1, 2019, and the Commissioner's response and cross-motion to affirm (ECF Nos. 20, 21), filed May 1, 2019. Plaintiff did not file a reply.

**I.    BACKGROUND**

    **1.    Procedural History**

On February 10, 2015, Plaintiff applied for disability insurance benefits under Title II of the Act, alleging an onset date of April 1, 2014. AR[1] 42, 217-218. Plaintiff's claim was denied initially and on reconsideration. AR 131-134, 136-140. A hearing was held before an Administrative Law Judge ("ALJ") on June 9, 2017. AR 74-96. On December 5, 2017, the ALJ issued a decision finding that Plaintiff was not disabled. AR 39-56. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review on September 25,

---

[1] AR refers to the Administrative Record in this matter. (Notice of Manual Filing (ECF No. 15).)

2018. AR 1-7. Plaintiff, on November 19, 2018, commenced this action for judicial review under 42 U.S.C. §§ 405(g). (*See* IFP App. (ECF No. 1)).

## II. DISCUSSION

### 1. Standard of Review

Administrative decisions in social security disability benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). But the Commissioner's findings may be set aside if they are based on legal error or if they are not supported by substantial evidence. *See Stout v. Commissioner, Social Sec. Admin*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193

(9th Cir. 2004). When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

### 2. Disability Evaluation Process and the ALJ Decision

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The individual must also provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that he can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. *Id.* § 404.1572(a)-(b). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. *Id.* § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *Id.* § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28, 96-3p, and 96-4p.[2] If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

The SSA must follow a special technique to evaluate mental impairments at steps two and three. 20 C.F.R. § 404.1520a. The special technique requires the ALJ to substantiate the presence of a medically determinable impairment using pertinent symptoms, signs, and laboratory

---

[2] SSRs constitute the SSA's official interpretation of the statute and regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are entitled to some deference as long as they are consistent with the Social Security Act and regulations. *Bray*, 554 F.3d at 1223 (finding ALJ erred in disregarding SSR 82-41).

findings, and then to rate the degree of functional limitation that results from the mental impairment in four broad categories: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* § 404.1520a(b)-(c). If the degree of limitation in the first three categories is none or mild, and the claimant has no episodes of decompensation of extended duration, then the claimant's mental impairment is not severe, and the analysis proceeds. *Id.* § 404.1520a(d)(1).

But before moving to step four, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; *see also* SSRs 96-4p and 96-7p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years before the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and perform a SGA. 20 C.F.R. §§ 404.1560(b) and 404.1565. If the individual has the RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R.

§ 404.1520(g). If she is able to do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Yuckert*, 482 U.S. at 141-42.

Here, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920. AR 16-23.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 1, 2014. AR 44.

At step two, the ALJ found that Plaintiff had medically determinable severe impairments of bipolar disorder and schizophrenic disorder. AR 45. The ALJ found Plaintiff's shoulder impairment and hypothyroidism non-severe. *Id*.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*.

At steps two and three, the ALJ applied the requisite special technique to evaluate Plaintiff's mental impairments and found that these impairments cause no limitation in understanding, remembering, or applying information or in adapting or managing oneself. AR 45-47. But the ALJ did find that Plaintiff has a moderate limitation in interacting with others and with concentrating, persisting, or maintaining pace. AR 46-47.

At step four, the ALJ found that Plaintiff has the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c) except that she can stand, walk, or sit for up to six hours; she is limited to simple repetitive tasks with a reasoning level of one to two; and she is limited to not more than occasional contact with supervisors, co-workers, and the general public. AR 47. The ALJ also found that Plaintiff is unable to perform PRW. AR 54.

At step five, the ALJ considered Plaintiff's age, education, work experience, and the RFC and found that jobs exist in significant numbers in the national economy that Plaintiff can

perform. *Id.* Accordingly, the ALJ concluded that Plaintiff was not under a disability at any time from April 1, 2014 through the date of the decision, December 5, 2017. AR 56.

### 3. Analysis

#### a. Whether substantial evidence supports the ALJ's residual functional capacity finding

The ALJ's residual functional capacity ("RFC") finding did not include limitations pertaining to Plaintiff's possible absences resulting from decompensation. AR 47.

##### i. The parties' arguments

Plaintiff moves to remand this matter on grounds that the ALJ's RFC finding is not supported by substantial evidence because the ALJ erred by not incorporating Plaintiff's periods of decompensation into her RFC. Plaintiff adds that the ALJ erred by improperly dismissing Plaintiff's decompensation states on grounds of alleged non-compliance with prescribed medications. Plaintiff further argues that the ALJ erred by not applying SSR 82-59. Under SSR 82-59, the ALJ is required to follow a four-step sequential evaluation process when denying benefits to an otherwise disabled plaintiff on grounds that she is non-compliant with prescribed treatment.

The Commissioner disagrees. She argues that Plaintiff's improvement with medical compliance and certain opinion evidence constitute substantial evidence to support the ALJ's RFC finding. The Commissioner also argues that the ALJ was not required to apply SSR 82-59 because the ALJ "discussed Plaintiff's non-compliance in conjunction with her subjective statements . . . ."

##### ii. The record and the ALJ's decision related to Plaintiff's periods of decompensation

As discussed in more detail below, Plaintiff decompensated three times during the relevant period. Plaintiff was hospitalized for a minimum of 20 days each time. The record does not clearly establish what caused the first two decompensation periods. The third period was caused by medication non-compliance.

In 2014, Plaintiff was hospitalized for an "acutely decompensated state" at Southern Nevada Adult Mental Health Services.[3] AR 362. The records for this hospitalization reveal that the medical provider was unable to identify the triggers for Plaintiff's decompensated state even though Plaintiff's roommate and friend stated during the intake process that Plaintiff had not been "eating or drinking adequately."[4] *Id*. A hospital report does indicate that Plaintiff denied taking any psychotropic medications "for an extended time prior to admission." AR 363. However, the author of the report noted that Plaintiff was unreliable, and the report was also deemed "unreliable." AR 362. Nonetheless, the ALJ relied on this report and concluded that Plaintiff's first period of decompensation was "likely" the result of Plaintiff not being compliant with prescribed medication. AR 49.

Plaintiff was next hospitalized in July 2016.[5] AR 474. When discussing this decompensation period, the ALJ did not find that non-compliance with prescribed medication was the cause of Plaintiff's hospitalization. In fact, the ALJ did not cite a reason for Plaintiff's hospitalization. AR 50. Rather, he correctly cited to the record that non-compliance with *after-care* instructions could result in adverse effects such as a return of worsening mood and psychotic symptoms. *Id*. The record appears silent on whether non-compliance with prescribed medication caused Plaintiff's decompensation. *See, e.g.,* AR 474-479.

---

[3] The record indicates that Plaintiff was first hospitalized at Summerlin Hospital Medical Center on March 27, 2014 before being discharged on April 4, 2014 and transferred to Southern Nevada Adult Mental Health Services. AR 350, 360. According to the Summerlin Hospital Medical Center records, Plaintiff was transported to the emergency department via ambulance for psychosis, hallucinations, flight of ideas, and rambling speech. *Id*. Aside from drug tests that evidence that Plaintiff was not taking amphetamine, barbiturates, benzodiazepine, cannabinoids, cocaine, opiates, and PCP, the records do not offer any information regarding whether Plaintiff was on any psychotropic medications. AR 354. In fact, the intake summary reveals that Plaintiff required chemical sedation, was "very confrontational[,] and was "unable to give any details or reliable history at this time[.]" AR 350. The Southern Nevada Adult Mental Health Services records read similarly; the doctor noted Plaintiff's "rx history not clear as pt actively psychotic on oexam [sic] and intake data limited . . . ." AR 425.

[4] During an observation at Southern Nevada Adult Mental Health Services on April 7, 2014, the doctor noted that Plaintiff was "admitted on a legal hold after her room mate [sic] called 911. The patient was agitated and apparantly [sic] having a panic attack." AR 382. During Plaintiff's subsequent visit to Southern Nevada Adult Mental Health Services on April 29, 2014, Plaintiff "reports that she was hospitalized asa [sic] result of confusion between her and her ex bf." AR 380.

[5] According to the Southern Nevada Adult Mental Health Services medical records, Plaintiff was admitted on July 3, 2016 and discharged on August 9, 2016. AR 474.

Plaintiff most recently decompensated and required hospitalization on September 6, 2016.[6] AR 494. The ALJ wrote, "It was noted that [Plaintiff] had not been compliant with her medications following her discharge one month ago and subsequently decompensated . . . ." AR 50. The record supports the ALJ's conclusion. AR 485 (According to Southern Nevada Adult Mental Health Services records, Plaintiff "was not compliant with her medications following discharge one month ago and has subsequently decompensated.").

Based on his analysis of the record, the ALJ dismissed Plaintiff's decompensation periods as a result of medication non-compliance. AR 51.

### iii. Whether substantial evidence supports the ALJ's residual functional capacity finding

In assessing a plaintiff's RFC, an ALJ must consider the combined effect of all the plaintiff's medically determinable physical and mental impairments, whether severe or non-severe. 20 C.F.R. § 404.1545(a)(2). An ALJ must also consider all the relevant medical evidence as well as other evidence, including subjective descriptions and observations of an individual's limitations by the individual and other persons (e.g., family, friends). *Id.* § 404.1545(a)(3). To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). That said, an ALJ, not a doctor, is responsible for determining a plaintiff's RFC. *See id.* § 404.1546(c); *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (noting that "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC").

The ALJ's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov*, 420 F.3d at 1002. But the ALJ's findings may be set aside if they are not supported by substantial evidence. *See Thomas*, 278 F.3d at 954. The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such

---

[6] Plaintiff was transported to UMC on September 6, 2016, AR 494, before she was transferred to Southern Nevada Adult Mental Health Services on September 13, 2016. AR 482. She was discharged from Southern Nevada Adult Mental Health Services on October 3, 2016. *Id.*

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F.3d at 1039; *see also Bayliss*, 427 F.3d at 1214 n.1. In determining whether the ALJ's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." *Reddick*, 157 F.3d at 720; *see also Smolen*, 80 F.3d at 1279.

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch*, 400 F.3d at 679; *Flaten*, 44 F.3d at 1457. Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence.

Here, the issue is whether substantial evidence supports the ALJ's RFC determination. More specifically, the question is whether substantial evidence supports the ALJ not factoring Plaintiff's periods of decompensation into her RFC. The ALJ's decision to not include Plaintiff's periods of decompensation in the RFC assessment appears to be based on his finding that Plaintiff's periods of decompensation were caused by medication non-compliance. *See, e.g.,* AR 51 ("The above noted medical record demonstrates that, while the [plaintiff] does have severe mental health impairments, they improve with medication, and her decompensations are linked to non-compliance with medications.")

The court holds that substantial evidence does not support the ALJ's determination that Plaintiff's periods of decompensation are all related to medication non-compliance. *See* AR 51. As noted above, it is unclear from the record what caused Plaintiff's first two periods of decompensation. And the court does not find that it is reasonable to infer from the medical records that the first two decompensation periods were caused by non-compliance with medication. As noted above, the first time Plaintiff decompensated, she said she was not taking medications, but her statements were deemed unreliable. The second time she decompensated, there was no indication that medication non-compliance was the cause. Accordingly, it was not

reasonable for the ALJ to infer (without developing the record more) that medication non-compliance caused all three decompensation periods.

Additionally, the ALJ noted that aside from these three decompensation periods, Plaintiff had been "calm, appreciative, appropriately dressed with good eye contact, alert and oriented to person, time, place, and situation, and with fair/good insight and judgment . . . ." AR 49. But even if Plaintiff experienced fair or relatively good mental health in between periods of decompensation, as a matter of logic, this does not mean that she will not continue to experience prolonged periods of decompensation (even if she takes her medication). Her medical providers continued to note the presence of anxiety or depression and continued to diagnose her with bipolar disorder or schizoaffective disorder (*see, e.g.,* AR 63, 69-70, 380-381), as they observed Plaintiff's improvement in terms of having a "good" or "ok" mood, an appropriate affect, and appropriate thought process or content. *See, e.g.,* AR 66, 70, 380-381. As the Ninth Circuit has held, "[g]iven the episodic nature of bipolar disorder, short-lived improvements in functioning are consistent with the diagnosis and cannot, by themselves, constitute substantial evidence to override treating source opinions that [a plaintiff] was significantly impaired." *Buck*, 540 F. App'x. at 773. As such, the Ninth Circuit has also held that a Commissioner can "erroneously" over-rely on "indications in the medical record that [the plaintiff] was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a [plaintiff's] ability to work or to her work-related functional capacity." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (quoting *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)).[7]

Finally, the court will not address Plaintiff's argument that the ALJ failed to comply with SSR 82-59,[8] which requires that the ALJ follow a sequential evaluation process if he denies benefits to a plaintiff who would otherwise be found disabled on the basis of a failure to follow

---

[7] The Commissioner argues that *Garrison* is not applicable to this case because, unlike the ALJ in *Garrison*, the ALJ here "did sketch out Plaintiff's course of treatment and described the course of improvement, including Plaintiff's periods of exacerbations . . . ." The Commissioner is correct in arguing that the ALJ described Plaintiff's course of treatment. But the Commissioner glosses over the ALJ's mischaracterization of the cause of Plaintiff's first decompensation and the ALJ's silence on the cause of Plaintiff's second decompensation.

[8] SSR 18-3p replaced SSR 82-59 effective October 29, 2018.

prescribed treatment.  This is so because the court makes no factual finding regarding whether Plaintiff is disabled; such a factual determination is for the ALJ to make.  The court is simply remanding for further proceedings regarding the ALJ's RFC finding as it relates to Plaintiff's decompensation periods.  Should the ALJ find on remand that Plaintiff would be disabled but for medication non-compliance, it is for him to apply SSR 82-59's sequential evaluation process. *See, e.g., Roberts*, 66 F.3d at 183.

**IV.  CONCLUSION AND ORDER**

Accordingly, IT IS ORDERED that Plaintiff's motion to remand (ECF No. 19) is GRANTED and this case is REMANDED for further proceedings regarding the ALJ's RFC finding.

IT IS FURTHER ORDERED that the Commissioner's cross-motion to affirm (ECF Nos. 20, 21) is DENIED.

IT IS ORDERED that the Clerk of Court must enter judgment in favor of Plaintiff Margaret Kiphart and against Defendant Commissioner of Social Security.

DATED: February 19, 2020

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE